**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

BRANDON STANFIELD,

    Plaintiff,

    v.

                          Civil Action No.: JKB-24-3418

LT. KEISHA THORNTON,
MAJOR CANTRICE WHITFIELD,
CELIA ELAINE COTTEN, RN,
SGT. ADENIYI ADEDEJI,
NURSE LYNDA BEARDSLEY, LPN,
BERNARD ABABIO,

    Defendants.

## MEMORANDUM

Pending before the Court are a Motion to Dismiss filed on behalf of Defendants Sgt. Adeniyi Adedeji, Lt. Keisha Thornton, Major Cantrice Whitfield, and Bernard Ababio (collectively "Correctional Defendants") (ECF No. 30) and a Motion to Dismiss or, in the Alternative, for Summary Judgment filed on behalf of Defendants Celia Elaine Cotten, RN, and Lynda Beardsley, LPN (collectively "Medical Defendants") (ECF No. 32).[1] Plaintiff Brandon Stanfield is an inmate at Patuxent Institution, a Maryland state correctional facility. He was advised of his right to file an opposition response to each motion and of the consequences of failing to do so. (ECF Nos. 31, 33.) Although he filed correspondence with the Court, it does not address the arguments raised by Defendants in either Motion. (ECF Nos. 34, 40.) There is no need for a hearing on the unopposed Motions. *See* Local Rule 105.6 (D. Md. 2025). For the reasons stated below, Defendants' Motions, both of which will be treated as Motions to Dismiss, will be granted.

---

[1] The Clerk will be directed to amend the docket to reflect the full and correct names of each Defendant.

## I.    BACKGROUND

### A.    Plaintiff's Allegations

In Plaintiff's Second Amended Complaint, he alleges that Sgt. Adedeji "continuously" watched him lift weights for a month prior to September 20, 2023. (ECF No. 8 at 6.) He claims that Sgt. Adedeji would get angry with him when he went to another officer to be searched before going to the yard or to the gym. (*Id.*) Plaintiff states that he knew Sgt. Adedeji was angry because he "raised his hands in the air looking at me like he was mad." (*Id.*) On September 20, 2023, Plaintiff claims that Sgt. Adedeji searched him and, in doing so, pulled Plaintiff's pants up, groped his private parts, and rubbed his inner thighs "for his own gratification." (*Id.*) According to Plaintiff, this action caused damage to his pride and dignity and made him feel ashamed. (*Id.*) Plaintiff immediately reported the incident to Sgt. Ababio, who told Plaintiff that he would send a lieutenant to talk to him when "chow hall" was done, but this never occurred. (*Id.*)

When Plaintiff returned to the tier where he was housed, he attempted to "call PREA"[2] using his tablet, but he could not complete the call. (*Id.* at 7.) Plaintiff waited until evening medications were being distributed to inform Celia Elaine Cotten, RN, at the nurse's station, that Sgt. Adedeji had sexually assaulted him. (*Id.*) He states that Ms. Cotten told Lt. Thornton about the report, but, according to Plaintiff, Lt. Thornton was "loud and obnoxious showing no discretion about my sexual assault." (*Id.*) Plaintiff recalls that he was embarrassed, ashamed, and frightened and told Lt. Thornton that he wrote an administrative remedy procedure complaint ("ARP") about the incident. (*Id.*) Plaintiff claims that Lt. Thornton told him that he could not write a PREA incident on an ARP and that if he did not believe her, Plaintiff could ask Major Whitfield. (*Id.*) Lt. Thornton summoned Major Whitfield to the area, who then confirmed that a PREA report could

---

[2] PREA refers to the Prison Rape Elimination Act. *See* 34 U.S.C. § 30301, *et seq.*

2

not be written up on an ARP. (*Id.* at 8.) Plaintiff states that he then ripped up the ARP he wrote about the sexual assault. (*Id.*)

On September 21, 2023, Plaintiff called the PREA hotline sometime between 8:00 a.m. and 10:45 a.m. (*Id.*) That same morning, Plaintiff was searched by Sgt. Adedeji again. (*Id.*) Plaintiff states that he was with a friend at the time, whom he asked to observe while Sgt. Adedeji searched Plaintiff. (*Id.*) On this occasion, Sgt. Adedeji did not pull Plaintiff's pants up or grope his private parts. (*Id.*) This was proof to Plaintiff that the search the day before was inappropriate and meant for Sgt. Adedeji's own gratification. (*Id.*)

After Plaintiff was searched, he proceeded to get his medication and, while there, told Lynda Beardsley, LPN, about the sexual assault that occurred the day before. (*Id.* at 9.) Ms. Beardsley told Plaintiff that she had spoken with Ms. Cotten about the incident and that Ms. Cotten had scheduled an appointment for Plaintiff with a physician, Dr. Moultrie. (*Id.*) Plaintiff saw Dr. Moultrie that day for a chronic care visit. (*Id.*) Dr. Moultrie asked Plaintiff about the sexual assault. (*Id.*) Plaintiff claims that Dr. Moultrie told him that "they are trying to cover it up." (*Id.*) Plaintiff alleges that he was never separated from Sgt. Adedeji for his safety and was never offered mental health services after the sexual assault. (*Id.*)

Plaintiff claims that Lt. Thornton, Major Whitfield, and Sgt. Ababio caused him mental anguish by not following the Department of Public Safety and Correctional Services ("DPSCS") policies regarding sexual assault. (*Id.* at 11–12.) He states that Sgt. Adedeji harmed him through deliberate indifference to his health and safety by sexually assaulting him. (*Id.* at 11.) He claims that the Medical Defendants also failed to comply with DPSCS policies regarding sexual assault, which caused him mental anguish. (*Id.* at 12.) As relief, Plaintiff seeks five million dollars in compensatory damages and five million dollars in punitive damages. (*Id.* at 13.)

3

### B.    Correctional Defendants' Response

The Correctional Defendants assert that the search conducted on Plaintiff does not amount to a sexual assault as it merely involved momentary and incidental touch without any accompanying sexual comments or abusive and degrading behavior on Sgt. Adedeji's part. (ECF No. 30-1 at 17.)  They argue that, even if the September 20, 2023, search was aggressive, it was not sexually motivated.  (*Id.* at 18.)  They further explain that:

> The Maryland [DPSCS] has adopted PREA's definition into its Executive Directive addressing the Prison Rape Elimination Act. Directive No. DPSCS.020.0026.04(3)(a)(v) (defining "sexual abuse" as "intentional contact, either directly or through the clothing, of or with the genitalia, anus, groin, breast, inner thigh, or the buttocks, that is unrelated to official duties or where the employee has the intent to abuse, arouse, or gratify sexual desire.")  In addition, the Department's Executive Directive on prohibited sexual misconduct specifically excludes from the definition of "sexual misconduct" any "contact with an inmate made by an employee in the course of the proper performance of an official duty such as a medical examination or an authorized and properly conducted security-related pat down or strip search." Directive No. OSPS.050.0030.04(13)(c).

(ECF No. 30-1 at 18–19 (footnotes omitted).)  They argue that the "pat down search of Mr. Stanfield does not constitute sexual abuse or sexual fondling under PREA and does not violate Department policy" because it was "conduct made in the course of a properly conducted pat down search."  (*Id.*)  Based on these facts, the Correctional Defendants assert they are entitled to have the Second Amended Complaint against them dismissed.

### C.    Medical Defendants' Response

Ms. Cotten denies that she failed to follow DPSCS policies for reporting sexual assaults after Plaintiff informed her that he was sexually assaulted on September 20, 2023.  (ECF No. 32-3 at 2.)  As she notes, Plaintiff admits that she reported the assault to an officer as required and also referred him to see a physician, Dr. Moultrie.  (*Id.*)

4

Ms. Beardsley recalls speaking with Ms. Cotten about Plaintiff's allegation of sexual assault on September 21, 2023, and recalls that Ms. Cotten reported the allegation to her supervisor. (ECF No. 32-4 at 2.) Because the report had already been made, Ms. Beardsley did not duplicate the effort. (*Id.*) She denies violating DPSCS policy governing the reporting of sexual assault. (*Id.* at 3.)

## II.   STANDARD OF REVIEW

The Correctional Defendants' Motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The Medical Defendants plead in the alternative for summary judgment under Federal Rule of Civil Procedure 56.[3] To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

## III.   ANALYSIS

Plaintiff alleges that both the Correctional and Medical Defendants violated his Fourth, Eighth, and Fourteenth Amendment rights by failing to comply with DPSCS policies

---

[3] Because the Second Amended Complaint fails to state a claim against either set of Defendants, the Court need not rely on evidence that Plaintiff submitted outside of the pleadings.

implementing PREA requirements. (ECF No. 8 at 11–12.) However, none of these claims passes muster under Rule 12(b)(6).[4]

### A.    Fourth Amendment

The Fourth Amendment to the United States Constitution "protects '[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures,'" and is intended "to protect personal privacy and dignity against unwarranted intrusion by the State." *Sims v. Labowitz*, 885 F.3d 254, 260 (4th Cir. 2018) (quoting U.S. Const. amend. IV). A "sexually invasive search" involves "movement of clothing to facilitate the visual inspection of a [person's] naked body." *United States v. Edwards*, 666 F.3d 877, 882–83 (4th Cir. 2011). A sexually invasive search may be found reasonable if it meets the criteria set forth in *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). The four factors to be evaluated are: (1) the scope of the particular intrusion; (2) the manner in which the search was conducted; (3) the justification for initiating the search; and (4) the place in which the search was performed. *Id.*; *King v. Rubenstein*, 825 F.3d 206, 214–15 (4th Cir. 2016). Application of the *Bell* factors to searches more invasive than the one at issue here has passed constitutional muster. *See, e.g.*, *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 333–34 (2012) (permitting suspicionless strip searches of pretrial detainees to ensure jail safety).

Plaintiff's claim is that the pat down search by Sgt. Adedeji included movement of his clothing and incidental touching of his genitals. He offers no basis for his claim that Sgt. Adedeji did so for his own gratification other than the fact that he watched Plaintiff in the yard, an act expected of a correctional officer charged with the supervision of inmates. "In addressing this type of constitutional claim courts must defer to the judgment of correctional officials unless the record

---

[4] To the extent that Plaintiff seeks to bring a claim under PREA itself, he fails to state a claim because PREA does not provide a private right of action. *Washington v. MD DPSCS Agents & Supervisory Offs.*, No. CV SAG-22-2424, 2025 WL 694637, at *13 (D. Md. Mar. 4, 2025).

6

contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security." *Florence,* 566 U.S. at 322–23. Relevant here, "the fact that an inmate is momentarily, incidentally, or accidentally touched during a strip search does not alone render the search unreasonable." *Johnson v. Robinette,* 105 F.4th 99, 117 (4th Cir. 2024). The actions of Sgt. Adedeji, like those at issue in *Robinette,* do not "[rise] to the level of a sexual assault within the meaning of the PREA or a constitutionally unreasonable search under the Fourth Amendment." *Id.* at 119. This claim must be dismissed.

### B. Eighth Amendment

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This prohibition "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin,* 77 F.3d 756, 761 (4th Cir. 1996). The Eighth Amendment is violated when an inmate is subjected to "unnecessary and wanton infliction of pain." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia,* 428 U.S. 153, 173 (1976)). To establish an Eighth Amendment violation, an inmate "must make two showings—one objective, the other subjective." *Alexander v. Connor,* 105 F.4th 174, 182 (4th Cir. 2024). "The objective component asks whether the force applied was sufficiently serious to establish a cause of action." *Brooks v. Johnson,* 924 F.3d 104, 112 (4th Cir. 2019). "The subjective component asks whether the officers against whom the claim is brought acted with a sufficiently culpable state of mind." *Alexander,* 105 F.4th at 182 (citation modified).

On the objective prong, for such a deprivation to be sufficiently serious, it must be "'extreme'—meaning that it poses 'a serious or significant physical or emotional injury resulting from the challenged conditions,' or 'a substantial risk of such serious harm resulting from . . . exposure to the challenged conditions.'" *Scinto v. Stansberry,* 841 F.3d 219, 225 (4th Cir. 2016)

7

(quoting *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003)). Further, "in determining whether a risk is 'substantial,' a court must 'assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.'" *Jordan v. Maryland*, No. CV ELH-22-1541, 2024 WL 3597203, at *11 (D. Md. July 31, 2024) (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)). The subjective prong requires demonstration that "prison officials acted with a 'sufficiently culpable state of mind.'" *Scinto*, 841 F.3d at 225 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "And in cases challenging conditions of confinement . . . that state of mind must be at least 'deliberate indifference' to the inmate's 'health or safety.'" *Ford v. Hooks*, 108 F.4th 224, 230 (4th Cir. 2024) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "'Deliberate indifference is a very high standard,' and 'a showing of mere negligence will not meet it.'" *Id.* (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004)).

As previously observed by this Court in its order directing Plaintiff to amend his Complaint:

> "[T]here can be no doubt that severe or repetitive sexual abuse of an inmate by a prison officer can be objectively, sufficiently serious' enough to constitute an Eighth Amendment violation." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2nd Cir. 1997) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347(1981)). Sexual abuse of an inmate by a prison official has no legitimate law enforcement or penological purpose and those actions alone may meet the subjective element of an Eighth Amendment claim. *See id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992)). However, when the claim alleges incidents that are not "severe enough to be 'objectively, sufficiently serious'" and "the incidents [are not] cumulatively egregious in the harm they inflicted" no Eighth Amendment claim is stated. *Boddie*, 105 F.3d at 861 (citing *Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994)).

8

(ECF No. 7 at 4.)  One isolated incident, such as what Plaintiff raises in the Second Amended Complaint, is not sufficient to state an Eighth Amendment claim.[5]

## IV.    CONCLUSION

For the reasons stated herein, Defendants' Motions, construed as Motions to Dismiss, will be granted.  A separate Order follows.

Dated this _19_ day of March, 2026.

FOR THE COURT:

James K. Bredar
United States District Judge

---

[5] For the same reasons, Plaintiff's Fourteenth Amendment claim, which he raises in a conclusory manner, also fails.

9